IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Maurice Young, | ) | C/A No. 3:21-cv-1208-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| CSL Plasma Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant CSL Plasma, Inc.'s motion for summary judgment, ECF No. 23, Plaintiff Maurice Young's cross-motion for partial summary judgment, ECF No. 27, and Defendant's Motion in Limine, ECF No. 37. For the reasons set forth below, the court grants Defendant's motion for summary judgment in part, denies Plaintiff's partial motion for summary judgment, and grants Defendant's motion in limine.

## BACKGROUND

**I. Procedural History**

Plaintiff filed this suit against Defendant in the Court of Common Pleas for Richland County, South Carolina, asserting claims of invasion of privacy, defamation, and loss of consortium. *See* [ECF No. 1.] On April 23, 2021, Defendant removed the action to this court on the basis of diversity jurisdiction. *Id.* On May 5, 2021, Defendant filed a motion to consolidate this case with *Courtney Young v. CSL Plasma*, No.: 3:20-cv-02720, a case filed by Plaintiff's wife, Courtney Young ("Mrs. Young."). Plaintiff opposed consolidation, and the court denied the motion. *See* [ECF No. 17.]

On September 2, 2021, Defendant filed its motion for summary judgment on all causes of action. [ECF No. 23.] On October 1, 2021, Plaintiff filed his response in opposition and a partial

1

motion for summary judgment on his invasion of privacy and defamation causes of action. [ECF Nos. 26, 27.] Thereafter, Defendant filed its reply in support of its motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment. [ECF No. 29.]

On February 28, 2022, Defendant filed a motion in limine to exclude testimony and evidence related to Mrs. Young's employment discrimination claims. [ECF No. 37.] Thereafter, Plaintiff filed a response in opposition, and Defendant filed a reply. [ECF Nos. 40, 42.]

The court held a hearing on June 17, 2022. All pending motions, therefore, have been fully briefed, heard and are ripe for consideration by this court.

## II. Relevant Undisputed Facts

Defendant is a human plasma collection business and operates two donation centers in Columbia, South Carolina, referred to as the Columbia 612 and Columbia 217 centers. Defendant tests every plasma donation for HIV, hepatitis B, and hepatitis C. *See* [ECF No. 23-3 at 4.] If a donor sample reacts positively on a viral marker it is deemed "unsuitable," and a deferral is automatically applied to the donor's data profile. *Id.* Every morning, "quality staff" at the plasma centers run an Unacceptable Test Results Tracking Log Report ("UTRTL") to identify any new test results posted and determine additional steps to be implemented for donors identified on the report. Donors are informed of their unsuitable test by mail or in person when they return to a center. *See* [ECF No. 23 at 9]; [ECF No. 23-4 at 4]; [ECF No. 23-2, C. Young Dep. 57:24–58:12.] If a donor's sample reacts to the hepatitis B viral marker, "quality staff" also run an address search to identify potential cohabitants of the donor who may also be plasma donors. If the system identifies an exact address match for the deferred donor in the system, the match is designated as a cohabitant and an "Investigative Address Match" note is placed on the cohabitant's donor profile.

2

[ECF No. 23-4 at 6.] Donors deferred based on their cohabitant status are flagged by reception at their next visit for further investigation. [ECF No. 23 at 9 (citing ECF No. 23-4 at 18).]

Plaintiff and his wife, Mrs. Young, periodically donated plasma at Defendant's centers. *See* C. Young Dep. 52–54. Plaintiff donated exclusively at the Columbia 217 center, and his wife donated at the Columbia 612 center where she was also employed. *See id.* 54–55. On or about March 20, 2019, Plaintiff's donor sample reacted positively for the viral marker for hepatitis B. [ECF No. 23-10 at 3.] Subsequently, Gregory Hines ("Hines"), Assistant Center Manager for Columbia 217, searched the CSL system for cohabitants of the Plaintiff and placed an Investigative Address note on Mrs. Young's donor profile. *See id.*; [ECF Nos. 23-9, 23-11.] The next day, while at work at the Columbia 612 Center, Mrs. Young was informed by Dr. Jennings in a private office that she had been deferred based on her status as a "cohabitant" of a donor, her husband, who had received reactive test results for Hepatitis B. *See* C. Young. Dep. 72–76. Mrs. Young stated she understood that the test result was not a diagnosis and that her husband should seek further testing with an outside physician. *Id.* 76:11–77:14.

Thereafter, Mrs. Young called Plaintiff and informed him of the unsuitable test result. [ECF No. 23-8, Pl. Dep. 9:13-20.] Defendant had not notified Plaintiff of the test result at that point. *See id.* Plaintiff was subsequently tested for Hepatitis B at the VA hospital, and the test came back negative. *See* [ECF No. 26-1.]

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red*

3

*Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323.  A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party

4

opposing that motion." *Id.* (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## ANALYSIS & DISCUSSION

Plaintiff makes two arguments in support of summary judgment in his favor: (1) Defendant wrongfully intruded into and publicized his private affairs when Defendant notified Mrs. Young of the unsuitable test result and made the test results public to other employees; and (2) Defendant defamed Plaintiff by publicizing false statements about a disease he does not have and speculating about his personal life. [ECF No. 27-1 at 3.]

Defendant argues the opposite position and asserts: (1) Plaintiff's invasion of privacy claims fail as a matter of law because Defendant rightfully possessed Plaintiff's medical records and never made Plaintiff's test result or deferral status public; and (2) Plaintiff's defamation claim fails as a matter of law because Plaintiff's test result reacted positively for Hepatitis B, even if he did not have the disease, and communications to other employees are subject to a qualified privilege. [ECF No. 23 at 5.] Additionally, Defendant asserts that Plaintiff's loss of consortium claim fails as a matter of law because he does not advance evidence of intentional or tortious conduct by Defendant against Mrs. Young. *Id.*

For the reasons set forth herein, the court agrees with Defendant that Plaintiff's claims for invasion of privacy and defamation fail as a matter of law but disagrees that Plaintiff's claim for loss of consortium fails as a matter of law. And regarding Defendant's motion in limine, the court agrees with Defendant that evidence concerning Mrs. Young's discrimination claims is excluded. Plaintiff may, however, introduce *the fact* of her termination.

**I. Invasion of Privacy**

South Carolina recognizes three separate and distinct causes of action arising "under the rubric of invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989). Here, Plaintiff has identified claims arising under the latter two causes of action—wrongful intrusion into private affairs and wrongful publication of private affairs. The court will address each cause of action in turn, below.

### A. Wrongful Intrusion into Private Affairs

"To prevail on an action for the wrongful intrusion into private affairs, a plaintiff must demonstrate: (1) an intrusion; (2) into that which is private; (3) which is substantial and unreasonable; (3) and intentional." *Atkinson v. House of Raeford Farms, Inc.*, No. 9-cv-01901, 2011 WL 1526605, at *7 (D.S.C. Apr. 20, 2011) (citing *Snakenberg*, 383 S.E.2d at 6). "In an action for wrongful intrusion into private affairs, the damage consists of the unwanted exposure resulting from the intrusion." *Snakenberg*, 383 S.E.2d at 6. "Thus, if the plaintiff proves the four elements needed to establish his cause of action, the fact of damage is established as a matter of law." *Id.*

Regarding the first element, "[a]n intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct." *Id.* In this case, the Defendant did not have to watch, spy, pry, beset, overhear or otherwise intrude to obtain Plaintiff's unsuitable test result. Rather, Plaintiff voluntarily submitted his plasma to Defendant to be tested and screened. When the sample reacted positively for Hepatitis B, both he and his wife were deferred from donating pursuant to Defendant's standard operating procedures. Nevertheless, Plaintiff alleges that Defendant intruded when: (1) a supervisor shared his test result with his wife and (2) when Defendant's employees "overheard and intentionally shared Plaintiff's private medical

6

information with one another with no other purpose but to gossip." [ECF No. 27-1 at 9.] The court will discuss each wrongful intrusion argument in turn.

### 1. Informing Mrs. Young

Mrs. Young, a CSL Plasma employee, testified that supervisor Dr. Jennings informed her of her husband's unsuitable test result at work, in a private room. *See* C. Young Dep. 72–73, 77–78. Again, Plaintiff does not allege that Mrs. Young was informed of his test result through overhearing, prying, or any other intrusion. Nor that any other employee wrongfully overheard the conversation between Mrs. Young and Dr. Jennings. The court is unpersuaded that a supervisor privately informing an employee that she is a co-habitant of someone who received an unsuitable test is the type of illicit eavesdropping or non-consensual intrusion contemplated under state law. *See Doe 2 v. Associated Press*, 331 F.3d 417, 422 (4th Cir. 2003).

Furthermore, Plaintiff's intrusion argument necessarily fails at element two, which requires the intrusion be into *private affairs*—meaning the intrusion "invaded an area 'which one normally expects will be free from exposure to the defendant.'" *Id.* (quoting *Snakenberg*, 383 S.E.2d at 6). Because Plaintiff voluntarily submitted his plasma sample to Defendant to be screened, he cannot expect that the results of the test will be "free from exposure" to Defendant. Nor does he allege any facts supporting an expectation that his donation test results would be free from exposure to Mrs. Young, who is both a CSL Plasma employee and listed as a cohabitant of the donor in Defendant's database. Thus, the court finds no evidence of an intrusion when Dr. Jennings informed Mrs. Young of the unsuitable test result.

### 2. Employee Gossip

Similarly, the court is unpersuaded that employees gossiping with one another at their workplace is the type of "overhearing" or wrongful intrusion contemplated by state law. Plaintiff

provided testimony from former employee Temel Dickerson ("Dickerson") that he was informed of Plaintiff's positive test result by unnamed office staff and that employees were discussing the test result with each other. *See* [ECF No. 23-15.] However, there is no allegation that Dickerson spied, pried, overheard, or otherwise intruded to obtain this information—it was shared with him by other employees. Thus, the court finds no evidence of a wrongful intrusion.

Furthermore, Plaintiff alleges that the employees shared this information "with no purpose but to gossip." [ECF No. 27-1 at 9.] Employee gossip speculating as to the *cause* of Defendant's unsuitable test result is beyond the scope of the employees' employment, and thus Defendant is not vicariously liable for those statements. *See Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 144 (4th Cir. 2018) (finding the defendant-employer not vicariously liable for an employee's comments, made at work, speculating that a coworker was having surgery due to an STD because it fell beyond the scope of employment); *Armstrong v. Food Lion, Inc.*, 639 S.E.2d 50, 52 (S.C. 2006) ("An act is within the scope of [an employee's] employment where reasonably necessary to accomplish the purpose of his employment and in furtherance of the [employer's] business."). Defendant had policies and procedures in place for managing an unsuitable test result, deferring the donor and any cohabitant, and informing those individuals. *See* [ECF Nos. 23-2, 23-4]. It would be nearly impossible for the Defendant to police all employee interactions or watercooler gossip to ensure that there is no speculation as to the *cause* of an unsuitable test result or donor deferral. *See Garnett*, 892 F.3d at 144. "Without the scope of employment requirement, employers such as the one here could hardly protect themselves from liability without proctoring the minutiae of a worker's daily life or imposing draconian restrictions on employee speech." *Id.*

In short, Plaintiff's test results and deferral status were not "private medical information" that Defendant intruded upon or wrongfully obtained where Defendant had permission to conduct the

testing and obtain the results. Nor has Plaintiff shown an intrusion by Defendant's employees or Defendant's liability for employee gossip. Plaintiff, thus, cannot demonstrate a wrongful intrusion into private affairs and Defendant is entitled to summary judgment on this cause of action.

### B. Wrongful Publicizing of Private Affairs

The court turns now to Plaintiff's second invasion of privacy cause of action—wrongful publicizing of private affairs. Under South Carolina law, the elements for a wrongful publication are: "(1) publicizing, (2) absent any waiver or privilege, (3) private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126, 130 (S.C. 1999). "The gravamen of the tort is publicity as opposed to mere publication." *Id.* Therefore, in order to establish Plaintiff's claim, he must first prove the essential element of publicity. *See Rycroft v. Gaddy*, 314 S.E.2d 39 (S.C. Ct. App. 1984) ("[A]n essential element of recovery is showing of a *public disclosure* of private facts."). The Supreme Court of South Carolina has explained that a "publication" is "any communication by the defendant to a third person" while "[p]ublicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 552 (D.S.C. 2020), *aff'd*, No. 20-cv-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) (quoting *Swinton Creek Nursery*, 514 S.E.2d at 132)).

Plaintiff's claim fails as a matter of law on this first element. Plaintiff alleges his test results were publicized when the results were discussed among Defendant's employees. The court accepts as true Plaintiff's allegation that almost all employees at the Columbia 612 and 217 centers knew about the positive test result. *See* Compl. ¶ 12; ECF No. 23-16 at 6–7. However, as

9

Defendant points out, no evidence exists that anyone outside of CSL Plasma knew about Plaintiff's test results or deferral status. Plaintiff never alleges that this information was shared with anyone outside of CSL Plasma or otherwise indicates that the information became public knowledge. In fact, "Plaintiff and his wife each testified that they are not aware of anyone outside CSL with knowledge of his unsuitable test result or deferral status."[1] [ECF No. 23 at 16 (citing C. Young Dep. 189:11-17; Pl. Dep. 23:21-24:9).]

Because Plaintiff alleges that only CSL employees knew of his test result or had access to such information, he fails to allege that the information was made *public* or distributed to the *public* by Defendant CSL Plasma, as required by his wrongful publication claim. *See J.R.*, 470 F. Supp. 3d at 553 ("Accepting plaintiffs' allegations as true, just because plaintiffs' [personally identifiable information] may be accessed within Walgreen Co. by Walgreen Co. employees does not mean it is distributed or made available to the public, which is a requirement of wrongful publicizing of private affairs claim."); *McMichael v. James Island Charter Sch.*, No. 18-cv-00816, 2019 U.S. Dist. LEXIS 238856, at *8 (D.S.C. July 23, 2019) (finding no publicity in the absence of evidence that members of the public saw private photos, even though a handful of employees associated with the defendant-school saw the photos). Consequently, Plaintiff's wrongful publication claim fails as a matter of law.

## III. Defamation

To prove a claim of defamation under South Carolina law, the Plaintiff must establish: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third

---

[1] Plaintiff testified that he ran into a CSL Plasma employee at the grocery store who told Plaintiff he was sorry to hear about what happened with Plaintiff and his wife. *See* Pl. Dep. 21:21–22:17. This comment does not support Plaintiff's publicity argument because Plaintiff testified that he knew the individual worked at CSL Plasma, and there is no evidence that anyone else in the store was made aware of the unsuitable test result through their conversation.

10

party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *King v. Charleston Cnty. Sch. Dist.*, 664 F. Supp. 2d 571, 586 (D.S.C. 2009) (citing *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 465 (2006)).  Plaintiff alleges that Defendant defamed him by publishing to its employees his private health information—his test results and deferral status—which "falsely accused Plaintiff of having a venereal disease."  Compl. ¶¶ 43–45.

As an initial matter, the Plaintiff must establish that a *false* and defamatory statement was made.  Plaintiff's defamation claim centers around Defendant communicating that his plasma sample reacted positively for Hepatitis B, which Plaintiff argues is a false statement given that he later received a negative test result from his healthcare provider. *See* [ECF No. 27-1 at 11.]  The fact that Plaintiff does not have Hepatitis B, however, is irrelevant.  The undisputed fact is that Plaintiff's plasma sample reacted positively to Hepatitis B in a preliminary screening—which Plaintiff does *not* allege was a falsified result.  As a result of this positive result, Plaintiff's donor profile was flagged, and he was deferred from donating.  While Plaintiff alleges that Defendant's employees were informed that "Plaintiff tested positive for a disease that would disqualify him from being a plasma donor," he does not allege that Defendant falsely communicated that he *had* such a disease. *See* Compl. ¶ 45.

Although Plaintiff argues that Dr. Jennings informed Mrs. Young "that her husband *had* Hepatitis B," this statement is inconsistent with his complaint's allegation that Dr. Jennings informed Mrs. Young that her husband *tested positive* for the disease. *See* [ECF No. 27-1 at 10 (emphasis added)]; Compl. ¶ 9.  Furthermore, Mrs. Young testified that Dr. Jennings informed her that her husband's sample *reacted positively* to Hepatitis B, she understood that it was *not* a medical diagnosis, and her husband should seek further testing from an outside physician.  C.

11

Young Dep. 72–77. Defendant may have breached internal protocol by informing the Plaintiff's spouse of the unsuitable test result before informing him, but the communication was not *false*. In sum, the record is wholly devoid of evidence supporting Plaintiff's allegation that CSL Plasma communicated a false statement that Plaintiff had Hepatitis B, and Plaintiff's defamation claim as to his unsuitable test result cannot survive summary judgment.

Nor can Plaintiff's claim that Defendant defamed him through employee gossip survive summary judgment. Plaintiff alleges that Defendant's employees publicized "statements that falsely accused Plaintiff of having a disease that he does not have and false accusations about adultery and drug usage." [ECF No. 26 at 14.] Plaintiff points to an employee, Dickerson, who testified that employees were spreading rumors about why Plaintiff and his wife were unable to donate. *See* ECF No. 23-15 ¶¶ 60–62. Specifically, Dickerson states that *some* employees were spreading rumors that there had been cheating, *some* were saying Plaintiff and his wife were in an open relationship, and *some* were saying Plaintiff and his wife used drugs. *Id.* ¶ 61. But he does not identify which employee said which allegedly defamatory statement. Instead, he broadly testifies that "basically everyone" at the plasma center was spreading the rumors and saying terrible things about Plaintiff and his wife. *Id.* ¶¶ 61, 62.

When asked if any managers talked about the kind of defamatory "things" he testified about, Dickerson identifies Assistant Center Manager Brando Butler ("Butler"). *See id.* ¶ 63. He does not identify which defamatory statement Butler said nor the context, place, or audience of such a statement. *See id.* ¶¶ 63–64. Instead, Plaintiff asks the court to read Dickerson's general admission that "in or around March and April 2019" basically all employees (including Butler) were spreading rumors—some speculating that there had been infidelities and others speculating there had been drug use—as a specific statement attributable to Butler. A claim for defamation

requires more specificity. *See English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, No. 97-cv-2397, 1999 WL 89125, 172 F.3d 862 (Table) (4th Cir. 1999) ("[I]n order to plead defamation, a plaintiff should allege specific defamatory comments [including] 'the time, place, content, speaker, and listener of the alleged defamatory matter.'" (citing *Caudle v. Thomason*, 942 F.Supp. 635, 638 (D.D.C. 1996))); *Colleton v. Charleston Water Sys.,* 225 F. Supp. 3d 362, 369 (D.S.C. 2016) ("Defendants cannot be expected to defend against an allegation that [they] defamed [the plaintiff] by making a statement heard by unknown persons at an unknown place at an unknown time."). Without evidence of who made the allegedly defamatory statement and what the speaker said, Plaintiff's defamation claims concerning other employees cannot survive summary judgment.[2]

## III. Loss of Consortium

Next, the court turns to Plaintiff's loss of consortium cause of action. Plaintiff contends that Defendant is liable to Plaintiff's wife, Mrs. Young, for tortiously harming her through "defamation and employment claims." Compl. ¶¶ 51–53. Defendant alone seeks summary judgment on this cause of action.

A claim for loss of consortium requires the plaintiff to show "intentional or tortious conduct" by the defendant. *Williams v. Lancaster Cnty. Sch. Dist.*, 631 S.E.2d 286, 294 (S.C. Ct. App. 2006). Indeed, "a loss of consortium claim cannot arise if no tort is committed against the impaired spouse." *Creighton v. Coligny Plaza Ltd. P'ship*, 512 S.E.2d 510, 523 (S.C. Ct. App. 1998) (quoting 41 Am. Jur. 2d Husband and Wife § 250 (1995)). "In order to prevail in an action for loss

---

[2] The court notes that even if Plaintiff had alleged a specific defamatory comment, Defendant would nevertheless be entitled to immunity if that statement was made outside the scope of the employee's employment. *See Garnett*, 892 F.3d at 143–146. Here, Plaintiff has not submitted any plausible argument that the statements identified in the Dickerson affidavit speculating that Plaintiff or his wife were drug users, adulterers, or in an open relationship were made within the scope of the employees' employment.

of consortium, a plaintiff must prove the defendant's liability for the spouse's injuries, as well as damages to the plaintiff resulting from the spouse's injuries." *Id.* Defendant contends that Plaintiff's loss of consortium fails as a matter of law because this court previously granted summary judgment on the employment claims by Plaintiff's wife, and Plaintiff "cannot identify any other tortious conduct by CSL against his wife." [ECF No. 29 at 7]; *see Young v. CSL Plasma, Inc.*, No. 3:20-cv-02720, 2022 WL 263327, at *2 (D.S.C. Jan. 28, 2022).

Although Plaintiff's wife's employment claims against Defendant were dismissed, her claim that Defendant defamed her is currently pending in state court. Because this court did not reach the merits of Plaintiff's wife's defamation claim before remanding the claim back to state court, the merits of her claim have not been considered and may survive in state court. Consequently, this court cannot say, as a matter of law, that no evidence exists of intentional tortious conduct toward Plaintiff's wife. Plaintiff's cause of action for loss of consortium thus survives summary judgment.

### IV. Defendant's Motion in Limine

Because the court denies summary judgment on Plaintiff's fourth cause of action for loss of consortium, it must also address Defendant's motion in limine, ECF No. 37. Defendant's motion in limine seeks to exclude evidence related to Mrs. Young's employment discrimination claims, on which this court previously granted summary judgment in favor of the Defendant. At the hearing, Plaintiff indicated that he seeks to introduce the fact of Mrs. Young's termination, as well as testimony that she disputes the reason for her termination.

Plaintiff has the burden of proving his loss of consortium claim and intentional defamatory conduct toward his wife at trial—including proving damages. To the extent Plaintiff seeks to introduce the fact of Mrs. Young's termination as part of the damages to be proved, he may.

14

However, the court agrees with Defendant that any evidence concerning Mrs. Young's employment discrimination claims, the allegation that she was wrongfully terminated, or her belief or perception as to why she was terminated is expressly excluded as irrelevant under Federal Rule of Evidence 402. If such evidence provides any probative value in this case, it is substantially outweighed by the risk of unfair prejudice and confusing the jury.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 23, is **GRANTED** in part and Plaintiff's Partial Motion for Summary Judgment, ECF No. 27, is **DENIED**. The court grants summary judgment in favor of Defendant on Plaintiff's first and second causes of action for invasion of privacy and Plaintiff's third cause of action for defamation and denies summary judgment as to Plaintiff's fourth cause of action for loss of consortium. Additionally, Defendant's motion in limine, ECF No. 37, is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

July 21, 2022
Columbia, South Carolina